The Kent County Agricultural Society v. Joseph Houseman.

|        |        |
|--------|--------|
| 81     | 609    |
| 117    | 237    |
| 81     | 609    |
| 135    | ¹350   |

*Constitutional law—Agricultural societies—Limitation of duration —Non-user—Officers—Sale of property.*

1. Section 10, Art. 15, of the Constitution, which provides that "no corporation, except for municipal purposes, or for the construction of railroads, plank-roads, and canals, shall be created for a longer time than thirty years," does not apply to county agricultural societies organized under How. Stat. §§ 2303-2312.

2. The evident intent of section 10, Art. 15, of the Constitution, limiting the life of certain corporations to thirty years, was to prevent the perpetuation of corporate power and corporate wealth so as to place it practically beyond the reach of the people or the Legislature; and it was intended to apply to corporations of a *private* character, organized for profit and the

accumulation of wealth, and not to those which were *public* in their character, and designed solely for the purpose of education and improvement.

3. The doctrine of *non-user* cannot apply to a county agricultural society whose lessee has held annual fairs, and carried out all of the purposes of the organization, which has been kept up, and whose directors and officers have continued to perform their duties.

4. In the absence of an election, the directors and officers of a county agricultural society organized under How. Stat. §§ 2303–2312, hold over.

5. The president and secretary of a county agricultural society, organized under How. Stat. §§ 2303–2312, are *ex officio* directors, and entitled to vote on all matters the same as those who are specifically called " directors."

6. Act No. 378, Local Acts of 1885, authorizing the Kent County Agricultural Society to dispose of its grounds and invest the proceeds, is a valid enactment.

Appeal from Kent.   (Grove, J.)   Argued May 7, 1890. Decided July 2, 1890.

Bill to compel specific performance of contract.   Defendant appeals.   Affirmed.   The facts are stated in the opinion.

*Blair, Kingsley & Kleinhans,* for complainant.

*Maurice M. Houseman,* for defendant.

GRANT, J.   The complainant was organized December 27, 1855, under an act of the Legislature providing for the formation of county and town agricultural societies. How. Stat. §§ 2303–2312.   The object of this society was declared to be " the promotion of agriculture and all its kindred arts."   In 1856 it purchased 35 acres of land adjoining the city of Grand Rapids for fair-ground purposes.   It fenced the grounds, erected suitable buildings, held annual fairs thereon until 1878, and in that year leased its property to the West Michigan Agricultural & Industrial Society, which has ever since occupied the

grounds and held annual fairs thereon. It has never had any capital stock, and the statute provides for none. Assuming that its charter had expired by limitation, it was reorganized July 27, 1889, under an act of the Legislature approved June 18, 1889. Act No. 155, Laws of 1889. This was done, however, from abundant caution, in order to avoid any question of the continuance of the corporation. Its validity as such corporation has never been questioned by any stockholder or other party, although the term of 30 years since its organization expired in 1885, and although the 3 years allowed to corporations to wind up their affairs, after 30 years, has also expired. Neither the statute, nor its articles of association, specify any time for its corporate existence.

On February 1, 1890, the defendant made an offer for the purchase of its lands, provided a good title could be given. The directors passed a resolution accepting the offer. February 12, 1890, the directors passed another resolution, authorizing its president and secretary to make a written contract with defendant for such purchase, which contract was on the same day duly executed on its part, and also by the defendant. A certain amount was to be paid down upon the execution and delivery of the deed, and the remainder in ten days after demand. The deed was to be executed, and first payment made, February 17, 1890. The contract contained a provision that the defendant should have three days from the date thereof to determine whether complainant could convey a good title. If he should determine that it could not, then complainant agreed to commence a suit in a court of competent jurisdiction to determine the question. If said court should decree that complainant could convey a good title, then defendant agreed to perform the contract. February 17, complainant tendered a deed to defendant, and demanded payment. He refused to accept

or make payment on the ground that it was doubtful whether the society could convey a good title. Thereupon complainant brought this suit in the circuit court for the county of Kent, in chancery, for the specific performance of the contract. Hearing was had in open court, and decree rendered for complainant, and against defendant. Defendant appeals.

Two-thirds of complainant's members have consented in writing to the proposed sale. If defendant had been content to rest his title upon the decree of the court below, no question as to the validity of his title could afterwards have been raised by the complainant. The decree of the court below would have been conclusive upon the parties and their privies.

The last election of officers and directors was in 1878. The directors then elected have held over, except two, whose vacancies were duly and properly filled by the board itself.

Act No. 378, Local Acts of 1885, entitled, "An act to authorize the Kent County Agricultural Society to dispose of certain property and invest the proceeds," authorized the complainant, by a vote of five of its directors present and voting at any meeting of its board, to sell these grounds, and authorized the proper officers to execute a deed therefor in the event of a sale. How. Stat. § 2308, of the general act for the formation of such societies, provides that such societies may apply to the circuit court of the county where such society is organized and located to obtain the authority to sell the whole or any part of its lands. Such application must be authorized at an annual meeting by a vote of not less than two-thirds of the members present at such meeting, and notice of the intention to vote for such application must be published in some newspaper of the county once a week for three months next preceding such annual meet-

ing. The sale cannot be sustained under this section, as no notice was given as therein provided, and the assent of all the members was not obtained.

The following objections are made on behalf of the defendant:

1. That complainant has lost title to the lands by non-user in failing to hold annual fairs.

2. That it had ceased to exist, its charter having expired by limitation, and its lands therefore escheated to the State.

3. That the officers and directors could not hold over after the expiration of the life of the corporation.

4. That Local Act 378, of 1885, is in conflict with section 1, Art. 15, of the Constitution, which provides that corporations may be formed under general laws, but shall not be created by special act except for municipal purposes.

5. That five directors were not present, and did not vote for the sale.

We find no force in objections 1, 3, and 5. The purposes for which complainant was organized have been carried out every year since its organization. The doctrine of non-user cannot apply where complainant's lessee has held annual fairs, and has carried out all the purposes of the organization. The organization has been kept up, the directors and officers have continued to perform their duties, and no direct proceeding has been instituted on behalf of the State to question the validity of the corporation. In the absence of an election, the directors and officers of the corporation continued to hold over. By the articles of association the board of management consisted of a president, secretary, treasurer, and five directors. Each was entitled to a vote in the management of its affairs. At the meeting authorizing the sale, there were present the president, secretary, and four directors, all of whom voted to sell. These officers are *ex officio* directors, and are entitled to vote on all matters the same

as those who are specifically called "directors." We think that the proposition to sell was carried by the proper vote.

The remaining question, and the only one which, in our judgment, is involved in any doubt, is whether the complainant is a *quasi* public corporation, and can properly be classed within the term "municipal corporations," within section 10, Art. 15, of the Constitution, which says that—

"No corporation, except for municipal purposes, or for the construction of railroads, plank-roads, and canals, shall be created for a longer time than thirty years."

The evident intent of this section was to prevent the perpetuation of corporate power and corporate wealth so as to place it practically beyond the reach of the people or the Legislature. It was intended to apply to corporations of a private character, organized for profit and the accumulation of wealth, and not to those which were public in their character, and designed solely for the purposes of education and improvement. This is apparent and clearly appears from other clauses of the Constitution.

By section 11, Art. 13, the Legislature was required to encourage the promotion of intellectual, scientific, and agricultural improvements, and to provide for the establishment of an agricultural school. The complainant has none of the elements of an ordinary body politic and corporate, organized for private gain or pleasure, or any private purpose whatever. It is clearly not within the mischief designed to be prevented by the Constitution. It can make no dividends, and all its profits must be expended in the promotion of a public object. Any resident of the county can become a member by the payment of a small annual fee. All its income must be used for a public purpose, namely, the improvement of agriculture

and its kindred arts. It is confined within the limits of a county, one of the political divisions of the State. The sole object of this suit is to dispose of its present grounds for the purpose of obtaining other, larger, and more suitable ones. The act of 1885 expressly requires that the proceeds of the sale shall be so invested. It virtually, therefore, is but exchanging one piece of property for another, in order that it may the better carry out its objects. The growth of the city of Grand Rapids up to and around its present location, and the increase of population, and of the farming interests of the county, have rendered it very desirable, if not necessary, that the society should have larger grounds, and increase its present facilities.

It is significant, as showing the legislative intent and construction, that, in those statutes providing for the organization of private corporations, they have usually, if not always, provided that the articles of association of such corporations shall fix their periods of existence not exceeding 30 years, while in the acts providing for the organization of agricultural societies, and those of an educational or *quasi* public character, no such provision can be found.

The authorities are numerous that the word "municipal" has not a well-defined and technical meaning, and must be construed with reference to the evils to be prevented, and the purposes to be accomplished, the history of the provision of the constitution in which it is used, and the practical construction that has been placed upon it. 1 Bl. Comm. 44; 2 Kent, Comm. 275; 2 Burrill, Law Dict. 215; *Horton v. Cammissioners*, 43 Ala. 606; *Dillard v. Webb*, 55 Id. 474.

We therefore think that the act of 1885 authorizing the complainant to sell its lands was valid.

The decree of the court below must be affirmed. Inasmuch as this was an amicable suit, no costs will be allowed to either party.

The other Justices concurred.