### ISMON v. LODER.

1. CORPORATIONS—ACTION OF DIRECTORS—PAROL EVIDENCE.
    Parol evidence is admissible to prove the action of the directors of a corporation where the law does not require the same to be entered of record.

2. AGRICULTURAL SOCIETIES — MORTGAGES — AUTHORITY TO EXECUTE.
    2 Comp. Laws, § 5974, authorizes agricultural societies, by a two-thirds vote of their directors, to issue evidences of debt, secured by mortgage on the real estate of the society, whenever necessary for the purpose of paying for permanent grounds, or for buildings or improvements thereon. At a meeting of the stockholders of such a society, a resolution was adopted authorizing the directors to "negotiate for and procure a loan" on its grounds "in the sum of the purchase price, giving a mortgage thereon and securing a deed of the land." The minutes of a subsequent meeting of the board of

directors, which showed that all the directors were present, contained this entry: "Motion, that land be bought according to abstract. Carried. Motion, that the president and secretary be empowered to make loan of $2,000 and secure deed. Carried." It was shown by parol that all the directors voted for this resolution, and that the loan was negotiated accordingly. *Held*, that the execution of the mortgage was shown to be authorized.

3. Corporations—Stockholders' Meeting—Effect.

Although action taken at a meeting of the stockholders of a corporation may be ineffectual, it is proper to be considered in construing the minutes of a subsequent meeting of the directors relating to the same subject-matter.

4. Same—Agricultural Societies—Conveyances—Seal.

The character " [Seal]," set opposite the official signatures of the president and secretary of an agricultural society to a mortgage purporting to be that of the society, and reciting that its seal was affixed,—the corporation in fact having no formal seal, nor being required to have one,—should, in view of 3 Comp. Laws, § 9005, be given the effect of a corporate seal.

5. Same.

An agricultural society, though differing from ordinary business corporations, is nevertheless to be classed as a private corporation, and a conveyance by it is not void for want of a seal. 3 Comp. Laws, § 10417.

6. Corporations—Deeds—Execution—Signature.

3 Comp. Laws, § 9509, providing that no estate or interest in lands shall be created except by deed in writing, subscribed by the party creating the same, does not require that the deed of a corporation shall have its corporate name subscribed thereto, but the signatures of its president and secretary, with their official designation, are sufficient to give effect to the conveyance.

7. Mortgages—Execution Purchasers—Notice.

The rights of a purchaser at an execution sale to attack a prior recorded mortgage are no greater than those of the mortgagor, for he purchases with constructive notice of the mortgagee's rights.

Appeal from Calhoun; Winsor, J. Submitted October 21, 1903. (Docket No. 52.) Decided January 5, 1904.

Bill by Mary E. Ismon against William M. Loder and the Albion Agricultural Fair & Driving Park Association to foreclose a mortgage. From a decree for complainant, defendant Loder appeals. Affirmed.

*A. M. Culver*, for complainant.
*John C. Patterson*, for appellant.

CARPENTER, J. This suit is brought to foreclose a certain real-estate mortgage. The mortgage is dated June 4, 1894. It secures to James W. Sheldon, the mortgagee, the payment of $2,000, and purports to be executed by the Albion Agricultural Fair & Driving Park Association as mortgagor. Mr. Sheldon died shortly after the mortgage was given, and his administrator assigned the same to complainant (Sheldon's widow). The lower court gave complainant a decree. Defendant Loder, who bought the land at an execution sale after the mortgage was duly recorded, appeals to this court, and asks a reversal of that decree on several grounds. His objections will, however, all be sufficiently discussed if we consider his contentions that the execution of said mortgage was not authorized by the association, and that it was not executed in such a form as to be binding, either at law or in equity, on said association.

1. As to the authority for the execution of the mortgage: The authority of the association to execute this mortgage is given by section 5974, 2 Comp. Laws. That section reads:

"It shall and may be lawful for any agricultural or horticultural society duly organized as a corporation by virtue of any law of this State, by the vote of two-thirds of all the directors or other officers having the management of the affairs of such society, to issue bonds or other evidences of debt, * * * and to secure the payment of the same by a mortgage or mortgages upon the real estate of such society, or any part thereof, whenever necessary for the purpose of paying the purchase money of permanent grounds, or for buildings or improvements made or to be made thereon."

The evidence shows that the money secured by the mortgage was used to pay the balance unpaid on the contract for the purchase of the mortgaged land; that on April 9, 1894, at a meeting of the stockholders of said association, a resolution was adopted authorizing the board of directors to "negotiate for and procure a loan on the Albion Agricultural Fair & Driving Park Association grounds, in the sum of the purchase price, giving a mortgage thereon and securing deed of land." The minutes of a meeting of the board of directors held June 1, 1894, show that all the directors were present. We quote from those minutes:

"Motion, that land be bought according to abstract. Carried. Motion, that the president and secretary be empowered to make loan of $2,000 and secure deed. Carried."

Parol testimony was introduced showing that all the directors voted for this resolution, and that the "board of directors negotiated a loan of money to pay for it [the land]. They made the loan with James W. Sheldon. * * * He was to take a mortgage on the land. * * * We [the directors] were to secure him by a mortgage." The association has always recognized the instrument as a valid mortgage, and paid interest on it from its date, June 4, 1894, until some time in 1899.

It is contended by defendant that the minutes of the directors' meeting do not show that two-thirds of the directors voted for the execution of this mortgage, and that parol evidence is inadmissible to supply any omissions in those minutes. As the law did not require a record of this vote, we think parol evidence was admissible. See *Bank of Yolo* v. *Weaver*, (Cal.) 31 Pac. 160; *Edgerly* v. *Emerson*, 23 N. H. 555 (55 Am. Dec. 207); *Zihlman* v. *Cumberland Glass Co.*, 74 Md. 303 (22 Atl. 271); *Township of Taymouth* v. *Koehler*, 35 Mich. 22. Nor do we think this parol evidence open to the objection that it tends to contradict the recorded minutes of the directors'

meeting. Those minutes, if construed, as we think they should be, in connection with the resolution passed at the stockholders' meeting, and with the negotiations of the board of directors with Sheldon, in our judgment authorize the execution of the mortgage. This conclusion is not affected by the contention of defendant that the stockholders' meeting was illegal, and its action, therefore, ineffectual. Assuming such action to be ineffectual as a grant of authority, it nevertheless was an appropriate circumstance to be considered in construing the minutes of the subsequent meeting of the directors.

2. Was the mortgage so executed as to be binding upon the association? The instrument in question purports to be a mortgage of "the Albion Agricultural Fair & Driving Park Association, party of the first part." It concludes as follows:

"In witness whereof, said party of the first part has hereunto set —— hand and seal, this —— day of ——, in the year one thousand eight hundred and ninety ——.
"EUGENE C. LESTER, Pres.   [Seal.]
"GEORGE W. SCHNEIDER, Sec.   [Seal.]"

The certificate of acknowledgment certifies:

"Before me   *   *   *   personally appeared the Albion Agricultural Fair & Driving Park Association, by Eugene C. Lester, president, and George W. Schneider, secretary, of its board of trustees,   *   *   *   and severally acknowledged the execution thereof to be their free act and deed, and the free act and deed of the Albion Agricultural Fair & Driving Park Association."

Lester and Schneider were, respectively, the president and secretary of the association.

It is urged that the execution of the mortgage was defective because the corporate seal was not affixed, and because the corporate name was not subscribed. It is to be inferred, from the evidence in the record, that the association did not have a formal corporate seal. We cannot agree with defendant's counsel that the law requires that it should have such seal, and therefore we think that

section 9005, 3 Comp. Laws, gave to the "scroll or device used as a seal upon any deed of conveyance * * * the same force and effect as a seal attached thereto or impressed thereon." The whole tenor of the mortgage, and particularly the concluding statement therein, that the mortgagor's seal is affixed thereto, leads us to conclude that the seal set opposite the signatures of the president and secretary was intended to be the seal of the corporation. See *Proprietors of Mill-Dam Foundery* v. *Hovey,* 21 Pick. 417.

It is contended that this conclusion is not in harmony with the case of *Regents of University* v. *Detroit Young Men's Society,* 12 Mich. 138. In that case, seven Regents of the University and five members of a committee of the Young Men's Society subscribed a certain contract for the sale of real estate. The seal, placed opposite each signature, was held to be "the individual seal of the several persons signing the instrument." There was nothing to indicate in that case—as in this there is, by the words "Pres." and "Sec." placed between the signature and the seal—that the attached seal was not the seal of the individual subscribers.

If, however, we accept that case as an authority for the proposition that the seals in question are the individual seals of the officers, and not the seal of the corporation, it by no means follows that the instrument in question is void. Section 10417, 3 Comp. Laws, contains this language:

"And no bond, deed of conveyance, or other contract in writing, signed by any party, his agent or attorney, shall be deemed invalid for want of a seal or scroll affixed thereto by such party."

It is urged that this statute has no application to corporations, especially public corporations; and it is claimed that the agricultural association is a public corporation. The association, though it differs from the ordinary business corporations (*Kent County Agricultural Society* v. *Houseman,* 81 Mich. 609 [46 N. W. 15]), is nevertheless

to be classified as a private corporation (*Trustees of Dartmouth College* v. *Woodward*, 4 Wheat., at pages 668-672), and, in our judgment, an unsealed conveyance executed by it is valid under the language above quoted. The objection that the instrument was not sealed cannot, therefore, prevail.

Was the mortgage properly suoscribed by the corporation? It is contended that section 9509, 3 Comp. Laws, required that the name of the corporation be written at the conclusion of the mortgage, over the signatures of its officers. That section, so far as material to this discussion, reads:

"No estate or interest in lands * * * shall hereafter be created, granted, assigned, surrendered, or declared unless * * * by a deed or conveyance in writing, subscribed by the party creating, granting, assigning, surrendering, or declaring the same, or by some person thereunto by him lawfully authorized by writing."

This statute requires the grantor to subscribe the conveyance. It does not, however, as assumed in the argument of defendant, specify the form in which the signature shall be written. The initials of a party have been held a sufficient signature, within the statute of frauds. See *Phillemore* v. *Barry*, 1 Camp. 513; *Salmon Falls Manfg. Co.* v. *Goddard*, 14 How. 446; *Barry* v. *Coombe*, 1 Pet. 640; *Sanborn* v. *Flagler*, 9 Allen, 474; Browne, Stat. Frauds, §§ 355a, 362. The only way in which a corporation can sign its name is by acting through some officer. "The officer or agent of a corporation, who executes a deed in the name of the corporation by affixing thereto the impression of the common or corporate seal intrusted to his care, is the party executing the deed, as it is impossible that a corporation aggregate should execute or acknowledge a deed in person." *Lovett* v. *Steam Saw-Mill Ass'n*, 6 Paige, 60. While "the best form of execution [by an attorney] is writing the name of the principal, adding the words 'by his attorney,' and then signing the name of the attorney," it is sufficient if it "clearly shows

the signing to be the act of the principal, done and executed in his name by the attorney. Thus, where the attorney's name precedes that of the principal, the execution has been held sufficient." Browne, Stat. Frauds, § 13. *Wilks* v. *Back*, 2 East, 142, 145. The statute cannot, therefore, be construed as requiring that officers of a corporation, in subscribing the deed of the corporation, shall follow a particular form.

That the form adopted in this case was sufficiently regular to make the conveyance effectual was decided by this court in the case of *Regents of University* v. *Detroit Young Men's Society*, 12 Mich. 138, heretofore cited. In that case suit was brought in *assumpsit* on a special count setting up a contract wherein the Regents of the University, a body corporate, undertook to sell land to the Young Men's Society, another corporation. That contract was executed in almost exactly the same manner as the mortgage under consideration. The names of the contracting parties were not formally subscribed, though the names of the Regents of the University were, as were the names of the committee of the Young Men's Society. Upon demurrer, it was contended by the eminent counsel representing the defendants "that the contract was not executed by the parties, nor by any persons purporting to act for them; it was signed and sealed by individuals as such." This contention was disposed of by the court in the following language:

"The next objection is that the instrument set forth does not conform to the allegations of the declaration, inasmuch as it does not purport to have been executed by the plaintiffs or defendants, or any person for them, nor that the same was sealed by the respective corporations, or either of them. It needs but a glance at the attestation clause and the signatures to show that so much of the above objection as claims that the instrument set forth does not purport to be executed by the plaintiffs or defendants, or any person for them, is not well founded."

Authorities may be cited opposed to this conclusion, and supporting defendant's contention that the corporate

name must be formally subscribed. See *Isham* v. *Bennington Iron Co.*, ·19 Vt., at page 252; *Brinley* v. *Mann*, 2 Cush. 337 (48 Am. Dec. 669). The· decision in *Regents of University* v. *Detroit ˋYoung Men's Society* must, however, be regarded as controlling; and, in our judgment, as already shown, it is supported by sound reasoning.

We cannot agree with defendant that, because he purchased at an execution sale, his rights to attack this mortgage are greater than those of the mortgagor. As the mortgage was on record when his interests were acquired, we must hold that defendant purchased with constructive notice.

The decree of the court below must therefore be affirmed, with costs.

The other Justices concurred.